GARMAN TURNER GORDON LLP
TALITHA GRAY KOZLOWSKI, ESQ.
Nevada Bar No. 9040
Email: tgray@gtg.legal
TERESA M. PILATOWICZ, ESQ.
Nevada Bar No. 9605
E-mail: tpilatowicz@gtg.legal
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
Tel: 725.777.3000
[Proposed] *Attorneys for Debtor*

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>VARALUZ, LLC,<br><br>    Debtor. | CASE No. 24-13181-hlb<br><br>Chapter 11<br><br>Adversary No. |
| VARALUZ, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>KALAMATA CAPITAL GROUP, LLC, STEVEN MANDIS, CONNOR PHILLIPS, and BRANDON LAKS<br><br>    Defendants | **COMPLAINT** |

Varaluz, LLC ("Plaintiff", "Varaluz", or "Debtor"), debtor and debtor in possession in the above-captioned chapter 11 case (the "Chapter 11 Case"), by and through its undersigned counsel, Garman Turner Gordon LLP, hereby files this *Complaint* against Kalamata Capital Group, LLC, Steven Mandis, Connor Phillips, and Brandon Laks and states as follows:

**I.
JURISDICTION AND VENUE**

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§157 and 1334.

1

2.	This is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(F), (H), (K), and (O).

3.	Venue is proper in this Court pursuant to 28 U.S.C. §§1408 and 1409, because the Debtor's case is pending before the Bankruptcy Court.

4.	The procedural grounds for the relief requested herein is Federal Rule of Bankruptcy Procedure 7001.

5.	This adversary proceeding relates to the above named and numbered chapter 11 case pending in the District of Nevada.

6.	Pursuant to Federal Rule of Bankruptcy Procedure 7008, Plaintiff consents to the entry of final orders or judgment by the bankruptcy judge if it is determined that the bankruptcy judge cannot, absent consent of the parties, enter final orders or judgment consistent with Article III of the United States Constitution.

## II.
## PARTIES

7.	Plaintiff is the debtor and debtor in possession in the above-captioned Chapter 11 Case.  Plaintiff is a Nevada limited liability company, duly formed and operating under the laws of the State of Nevada.  At all relevant times, Plaintiff's principal place of business has been in Clark County, Nevada.

8.	Defendant Kalamata Capital Group, LLC ("Kalamata") is a limited liability company organized under the laws of the State of Delaware.  At all relevant times, Defendant's principal place of business has been in Bethesda Maryland at 7315 Wisconsin Ave. #550E, Bethesda, MD 20814.  Kalamata may be served by and through its registered agent: Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808.

9.	Defendant Steven Mandis ("Mandis") is an individual who on information and belief resides in the State of New York.  Mandis may be served at 1 Blue Hill Plaza, Lobby Level #1509, Pearl River, NY 10965, or wherever he may be found.  Mandis is the founder, principal, director, and chairman of Kalamata.

10. Defendant Connor Phillips ("Phillips") is an individual who on information and belief resides in Delaware. Phillips may be served at 7315 Wisconsin Ave. #550E, Bethesda, MD 20814, or wherever he may be found. Phillips is Co-President of Kalamata.

11. Defendant Brandon Laks ("Laks") is an individual who on information and belief resides in Delaware. Phillips may be served at 7315 Wisconsin Ave. #550E, Bethesda, MD 20814, or wherever he may be found. Laks is Co-President of Kalamata.

12. Collectively, Mandis, Phillips and Laks may be referred to herein as the "Individual Defendants." Collectively, Kalamata and the Individual Defendants may be referred to herein as the "Defendants".

### III.
### FACTS

13. On June 25, 2024 (i.e., the Petition Date), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of Nevada (the "Bankruptcy Court").

14. Debtor is authorized to operate its business and manage its property as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

15. No request has been made for the appointment of a trustee or examiner, and no statutory committee has been appointed.

16. After learning the skills and tricks of finance at Goldman Sachs, Mandis founded Kalamata to provide financial instruments, with the economic substance of very high interest loans, to struggling small and mid-sized businesses.

17. The Individual Defendants have each controlled Kalamata, and, unless otherwise stated, all Defendants have engaged in the acts and omissions described in this Complaint.

18. Using Kalamata as the Lender, Defendants have engaged in a fraudulent and illegal scheme to extract funds from small and mid-sized businesses through short-term loans at usurious interest rates through financial loan instruments they call "merchant cash advances" ("MCA"s).

3

19. Through illegal MCA transactions, such as the transaction(s) at issue in this lawsuit, Defendants have illegally collected funds from struggling small and mid-sized business in Nevada and nationwide, often driving business owners into ruinous debt and bankruptcy.

20. Defendants claim to help struggling small and mid-sized businesses by providing rapid access to funds without a lengthy, cumbersome application process and despite poor credit or no credit.

21. But the reality is, Defendants' transactions are illegal, usurious, fraudulent loans, with which Defendants debit from Plaintiff's bank account with alarming frequency (the "Periodic Debits").

22. As described by the widely-referenced financing website Pitchbook.com, Kalamata is a financial institution that provides various financing instruments, including without limitation small business loans, SBA loans, equipment leasing, lines of credit, and working capital loans to small businesses throughout the United States, and Kalamata's service provider type is "Lender."

23. Kalamata drafted, proposed, and on December 22, 2022, entered into a certain funding agreement with Plaintiff (hereinafter the "Loan Agreement") pursuant to which Kalamata made a loan of money to Plaintiff (the "Loan"). A copy of the Loan Agreement is attached hereto as **Exhibit 1**. The Loan Agreement fraudulently described the deal as a "Purchase and Sale of Future Receivables." New York law applies to the Loan Agreement and to this dispute.

24. Kalamata falsely stated in the Loan Agreement that it is buying a portion, which Kalamata calls a "Purchased Percent," of Plaintiff future receipts of revenue/receivables. Kalamata set Plaintiff's payments under the Loan Agreement to a fixed, recurring weekly amount of $10,313.00 (the "Remittance") that Kalamata fraudulently stated reflects a 15% Purchased Percent of the merchant's future revenue.

25. Plaintiff actually received in net funding (the "Net Funding") after deductions were made from a purchase price of $500,000.00 (the "Purchase Price"). The Loan Agreement defined the so-called "Purchased Amount" as $660,000.00.

26. Kalamata made the weekly $10,313.00 Remittance ACH withdrawals from Plaintiff's bank account, and would continue to do so until the full $660,000.00 so-called "Purchased Amount" was fully paid.

27. Under the terms of the Loan Agreement, Plaintiff would pay $526,276.00 ($10,313.00 x 52 weeks) annually to Kalamata. The "Purchase Price" (economically, the gross loan amount) was $500,000.00. The Net Funding was $482,201.00. Yet, under the terms of the Loan Agreement, after paying $526,276.00 ($10,313.00 x 52 weeks) annually to Kalamata, Plaintiff would still owe $133,724.00 to Kalamata ($660,000.00 - $526,276.00 = $133,724.00). Even using the gross loan amount of $500,000.00 (the Net Funding was only $482,201.00), Plaintiff had to pay $526.276.00 annually, and would still owe $133,724.00 on the loan after making such payments. This $133,724.00 still owed after one year under the Loan's terms would be paid off in 13 weeks at the Remittance rate of $10,313.00/week. ($133,724.00 / $10,313.00 = 13). Therefore, the total payout period at the Remittance rate would be 1 year, 13 weeks. The annual interest rate on the Loan not only exceeds the 16% civil usury rate, but also exceeds the 25% criminal usury rate under applicable New York law.

28. Kalamata misrepresented that if Plaintiff's revenue declines in the future, the merchants can "reconcile" their past payment amounts accordingly, obtaining refunds for past payments—and adjusting for future payments as well—so that Plaintiff would not be paying more than 15% of its revenue. Kalamata also falsely stated in the Loan Agreement that the transaction was open-ended, such that the advance of funds may be paid off over a long term if Plaintiff's receipt of revenue slows down.

29. All these representations are a sham, created by Defendants to lure Plaintiff to sign the Loan Agreements and to evade New York usury law by disguising the loan as something it is clearly not. In reality, the Loan Agreement is a fraudulent and illegal usurious loan, not a purchase of revenue.

30. Kalamata collected on the Loan Agreement according to the fixed weekly Remittance of $10,313.00 that had no connection to the Purchased Percent of 15% of revenues

5

stated in the Loan Agreement. Plaintiff's revenues fluctuated and varied widely from week-to-week and month-to-month, yet Kalamata debited the same fixed weekly Remittance from Plaintiff's bank accounts each week, regardless of declines in Plaintiff's revenue.

31. Kalamata promised to perform reconciliations in order to adjust the weekly Remittance amount to reflect Plaintiff's revenues as they fluctuated. Kalamata's promises of payment reconciliation are a fraud. Kalamata failed to follow the purported adjustment to the weekly Remittance and reconciliation process specified in the Loan Agreement, and manipulated the default provisions so as to put the remedy of reconciliation out of reach for Plaintiff. This made it impossible for Plaintiff to qualify for fair refunds of excess payments collected by Kalamata when Plaintiff's intake of revenue declined.

32. Kalamata also manipulated the default provisions of the Loan Agreement and falsely claimed that Plaintiff somehow impeded and prevented Kalamata from receiving the weekly Remittances and Purchased Percent amounts. Plaintiff did not impede or prevent Kalamata from receiving the weekly Remittances and Purchased Percent amounts. Plaintiff did not default under the Loan Agreement. Instead, Kalamata made the false claim that Plaintiff impeded and prevented Kalamata from receiving the weekly Remittances and Purchased Percent amounts in order to claim that Plaintiff defaulted on the Loan Agreement, when in reality there was no default by Plaintiff. Kalamata fraudulently claimed that Plaintiff defaulted under the Loan Agreement, and refused to adjust the Remittance because of the falsely claimed default.

33. Kalamata falsely and fraudulently declared Plaintiff in default when Plaintiff merely had insufficient funds in its bank account to cover Kalamata's weekly debits of the Remittance. After the bogus claim of Plaintiff's default, Kalamata sought immediate recovery, not only the missed Remittance payments but also Plaintiff's entire remaining balance.

34. Kalamata's fraudulent assertion of default by Plaintiff, put the remedy of reconciliation out of reach for Plaintiff. This made it impossible for Plaintiff to qualify for fair refunds of excess payments collected by Kalamata when Plaintiff's intake of revenue declined.

35. Kalamata also required the Loan to be personally guaranteed and secured against a vast array of Plaintiff's assets, far beyond the revenue Defendant purported to be purchasing.

36. Kalamata claimed for itself status as secured creditors under UCC Article 9, seeking to ensure full repayment in the event of Plaintiff's bankruptcy, long after Plaintiff's revenue has dwindled to zero, even if unsecured and lower-priority creditors may recover little to nothing.

37. Because the Loan Agreement was, in substance, monies to be paid back with interest in fixed payments, that in practice was alterable only at Kalamata's whim, the so-called 'Revenue Purchase Agreement' was and is a usurious loan, fraudulently cloaked as a purchase of revenue.

38. Kalamata did not determine whether the Remittance in fact reflected an estimate of the Purchased Percent of Plaintiff's receipts of revenue, and Kalamata did not reconcile the Remittance to the actual revenues of Plaintiff.

39. When Plaintiff's revenues declined after the Loan Agreement was entered into, the weekly Remittances became much higher than Plaintiff's business could sustain. Yet Kalamata would not adjust the Remittance, or make refunds, based on a reconciliation pursuant to the Loan Agreement, because, among other things, Kalamata falsely accused Plaintiff of being in default.

40. In practice, prospective changes to weekly Remittance amounts were wholly at the discretion of Kalamata, and did not operate to align the weekly Remittance amounts with the percentage of revenue that Kalamata had purportedly purchased. The reconciliation provisions of the Loan Agreement were illusory.

41. The unavailability of reconciliation confirms that the Loan Agreement was a loan.

42. The Loan Agreement defined the funds available for Kalamata to collect as broader than merely Plaintiff's receipts for the sale of goods and services.

43. Kalamata also reserved for itself extensive recourse against Plaintiff—and Plaintiff's owner personally through a personal guarantee—ensuring Kalamata' ability to collect the full Payback Amount (and more) in the event of default. The recourse that Kalamata reserve

7

for itself extends far beyond the percentage of business revenue it is purportedly purchasing, and it even extends to circumstances where Plaintiff's intake of revenue dwindles to zero.

44. The Loan Agreement also required full, immediate payment of the entire Payback Amount in the event of default—<u>discarding altogether the notion of payments tied to Plaintiff's revenue.</u> See Loan Agreement Section 3.4.

45. The principal sum advanced was repayable absolutely. Plaintiff had to keep paying until the principal was paid in full.

46. Moreover, Kalamata purported to obtain security interests in assets well beyond Plaintiff's revenue that are the subject of the Loan transaction, even including Plaintiff's "equipment, general intangibles, instruments, and inventory."

47. Kalamata also misrepresented to Plaintiff the facts of Plaintiff's payment history and the Remittance amounts actually due, in falsely claiming that Plaintiff defaulted on the Loan Agreement.

48. Kalamata misrepresented to Plaintiff that the funding transaction was not a loan, even though the facts and substance of the funding transaction indicate otherwise.

49. Kalamata made disclaimers in the Loan Agreement to Plaintiff that it was not a loan. Such disclaimers are false. The funding transaction is, in its substance, a fixed-payment, usurious loan, and not purchases of Plaintiff's future revenue.

50. Similarly, as set forth above, Kalamata also misrepresented to Plaintiff that the Remittance was determined based on a set percentage of Plaintiff's revenue, and that Plaintiff can obtain Reconciliations and Adjustments based on such percentages in the event that its revenues decline.

51. These representations are also false. In practice, Kalamata required Plaintiff to repay the Loan through fixed weekly Remittance amounts that were not based on Plaintiff's revenue, and Kalamata took numerous measures to make it virtually impossible for Plaintiff to obtain a reconciliation or an adjustment based on declining revenues, including without limitation

8

falsely telling Plaintiff that it was in default, refusing to reconcile the Remittance amounts with the changing revenues, and accelerating the entire amount of the Loan.

52. Plaintiff was insolvent, based on its debts exceeding its assets and the general inability to pay debts as they came due, on the dates the transfers were made—and Kalamata was aware of this fact at the time of the Loan Agreement and at the time of each transfer by Kalamata to Plaintiff.

53. Nature of the participation of the Individual Defendants: Each of the Individual Defendants directed and caused Kalamata to make each of the statements and omissions, and caused Kalamata to take each of the actions, described in this Complaint.

## IV.
## CAUSES OF ACTION

### FIRST CAUSE OF ACTION:  FRAUD

54. Plaintiff adopts by reference, and incorporates all paragraphs above and below, as if fully stated herein.

55. Each of the Defendants made false material misrepresentations to Plaintiff, including in the Loan Agreement drafted by Kalamata, at or shortly preceding the entering of the Loan Agreement by Plaintiff. Such misrepresentations by Defendants are described in the facts section above, and include without limitation:

- Misrepresenting to Plaintiff the nature of the Loan as a purchase of Plaintiff's revenue;

- Misrepresenting to Plaintiff that the Loan Agreement is legal and enforceable when in fact it is a usurious loan, and thus void under New York law;

- Falsely representing to Plaintiff that the weekly Remittances stated in the Loan Agreement are calculated in good faith based on Purchased Percent of Plaintiff's revenue;

- After entering into the Loan and after over half of the Net Funding had been paid back, falsely claiming that Plaintiff defaulted under the Loan Agreement, and otherwise making it virtually impossible for Plaintiff to obtain a reconciliation of past payments or adjustment of future payments

9

- based on the Purchased Percent, despite declining revenue;

- Falsely representing that Kalamata will adjust Plaintiff's future payments based on the Purchased Percent of Plaintiff's revenue;

- Misrepresenting to Plaintiff the remaining balance; and

- Short-changing Plaintiff on their funded amounts and overcharging Plaintiff on the fees deducted from the funding.

- Falsely claiming that Plaintiff defaulted on the Loan.

56. Defendants intended to defraud Plaintiff by making the above statements and actions in order to get Plaintiff to enter into the usurious Loan Agreement and to illegally extract funds from Plaintiff.

57. Plaintiff reasonably relied upon Defendants' false statements and entered into the Loan Transaction. Had Plaintiff understood the actual substance of the transaction, or Defendants' manipulation of the default provisions, the lack of reconciliation ability, or the other instances of false statements described above, it would have never entered into the Loan Agreement.

58. Defendants' misrepresentations proximately caused Plaintiff harm, including the payment of usurious interest, for which Plaintiff seeks damages to the fullest extent of the law.

### SECOND CAUSE OF ACTION: NEGLIGENT MISREPRESENTATION

59. Plaintiff adopts by reference, and incorporates all paragraphs above and below, as if fully stated herein.

60. Plaintiff and Defendants had a privity or privity-like relationship giving rise to a duty of Defendants to impart correct information to Plaintiff.

61. Defendants imparted incorrect information to Plaintiff. Such misrepresentations by Defendants are described in the facts section above, and include without limitation:

- Misrepresenting to Plaintiff the nature of the Loan as a purchase of Plaintiff's revenue;

- Misrepresenting to Plaintiff that the Loan Agreement is legal and enforceable when in fact it is a usurious loan, and thus void under New York law;

- Falsely representing to Plaintiff that the weekly Remittances stated in the Loan Agreement are calculated in good faith based on Purchased Percent of Plaintiff's revenue;

- After entering into the Loan and after over half of the Net Funding had been paid back, falsely claiming that Plaintiff defaulted under the Loan Agreement, and otherwise making it virtually impossible for Plaintiff to obtain a reconciliation of past payments or adjustment of future payments based on the Purchased Percent, despite declining revenue;

- Falsely representing that Kalamata will adjust Plaintiff's future payments based on the Purchased Percent of Plaintiff's revenue;

- Misrepresenting to Plaintiff the remaining balance; and

- Short-changing Plaintiff on their funded amounts and overcharging Plaintiff on the fees deducted from the funding.

- Falsely claiming that Plaintiff defaulted on the Loan.

62. At the times of the misrepresentations, Defendants knew the information described above was incorrect.

63. Plaintiff reasonably relied upon Defendants' false statements and entered into the Loan Transaction. Had Plaintiff understood the actual substance of the transaction, or Defendants' manipulation of the default provisions, the lack of reconciliation ability, or the other instances of false statements described above, it would have never entered into the Loan Agreement.

64. Defendants' misrepresentations proximately caused Plaintiff harm, including the payment of usurious interest, for which Plaintiff seeks damages to the fullest extent of the law.

**THIRD CAUSE OF ACTION—CIVIL CONSPIRACY TO DEFRAUD**

65. Plaintiff adopts by reference, and incorporates all paragraphs above and below, as if fully stated herein.

66. All of the Defendants agreed to defraud Plaintiff. Their common objective was to trap Plaintiff into the illegal usurious Loan Agreement and illegally extract funds from Plaintiff.

67. Defendants' acts in furtherance of their common objective, including making the false statements described above in the FRAUD cause of action. Defendants had knowledge that

their false and misleading statements were not correct. Defendants also knew that they would manipulate the servicing of the Loan and cause bogus defaults and refuse to reconcile or adjust the Purchased Percent or weekly Remittance amounts.

68. Plaintiff reasonably relied upon Defendants' false statements and entered into the Loan Transaction. Had Plaintiff understood the actual substance of the transaction, or Defendants' manipulation of the default provisions, the lack of reconciliation ability, or the other instances of false statements described above, it would have never entered into the Loan Agreement.

69. Defendants' actions proximately caused Plaintiff harm, including the payment of usurious interest, for which Plaintiff seeks damages to the fullest extent of the law.

**FOURTH CAUSE OF ACTION: DECEPTIVE ACTS OR PRACTICES IN VIOLATION OF NEW YORK GENERAL BUSINESS LAW SECTION 349**

70. Plaintiff adopts by reference, and incorporates all paragraphs above and below, as if fully stated herein.

71. Such misrepresentations by Defendants are set forth in the facts section above, and include without limitation:

- Misrepresenting to Plaintiff the nature of the Loan as a purchase of Plaintiff's revenue;

- Misrepresenting to Plaintiff that the Loan Agreement is legal and enforceable when in fact it is a usurious loan, and thus void under New York law;

- Falsely representing to Plaintiff that the weekly Remittances stated in the Loan Agreement are calculated in good faith based on Purchased Percent of Plaintiff's revenue;

- After entering into the Loan and after over half of the Net Funding had been paid back, falsely claiming that Plaintiff defaulted under the Loan Agreement, and otherwise making it virtually impossible for Plaintiff to obtain a reconciliation of past payments or adjustment of future payments based on the Purchased Percent, despite declining revenue;

- Falsely representing that Kalamata will adjust Plaintiff's future payments based on the Purchased Percent of Plaintiff's revenue;

- Misrepresenting to Plaintiff the remaining balance; and

12

- Short-changing Plaintiff on their funded amounts and overcharging Plaintiff on the fees deducted from the funding.

72. Defendants advertised and created the Loan made to Plaintiff.

73. Defendants engaged in false and deceptive acts or practices in the conduct of their business and in the furnishing of loans.

74. Defendants' conduct was materially misleading and deceptive. Defendants' conduct was likely to mislead a reasonable consumer relating to the lending instrument acting reasonably under the circumstances. Plaintiff had no way of knowing that Defendants would manipulate the loan and generate a bogus default, then fail to reconcile the loan or adjust the usurious fixed weekly Remittance payments. Plaintiff justifiably relied on Defendants' false statements described above.

75. Plaintiff suffered injuries as a proximate result of Defendants' misleading and deceptive conduct and violations of New York General Business Law Section 349.

76. Plaintiff seeks recovery of its actual damages.

77. Further, because Defendants willfully and knowingly violated Section 349, Plaintiff seek exemplary damages to the fullest extent of the law.

### FIFTH CAUSE OF ACTION: CIVIL RICO

78. Plaintiff adopts by reference, and incorporates all paragraphs above and below, as if fully stated herein.

79. The Individual Defendants ran an enterprise—Kalamata.

80. The enterprise (Defendant company) is an ongoing organization that existed for multiple reasons (both legitimate and illegitimate) and served multiple purposes, one of which was to engage in a pattern of racketeering activity involving illegal usurious lending activities to defraud borrowers.

81. The Individual Defendants caused the fraudulent loan document to be marketed to Plaintiff and entered into by Plaintiff. From December 22, 2022 until the present date, the Individual Defendants and Kalamata have caused the Loan Agreement and similar other fraudulent

and usurious loan agreements to be marketed and entered into by unsuspecting borrowers, thereby constituting fraud and illegal usury.

82. The Individual Defendants each had a significant part in the operation and management of Kalamata and conducted company's affairs through a pattern of racketeering activity.

83. Such racketeering activity effected interstate commerce and enterprise.

84. The Individual Defendants violated 18 U.S.C. Sec. 1962.

85. As a proximate result of the Individual Defendants' participation in the racketeering enterprise, Plaintiff's business or property was harmed. Such harm included grossly overpaying for borrowed sums. But for the Individual Defendants causing their criminal enterprise Kalamata to solicit and enter into the illegal usurious and fraudulent Loan Agreement, Plaintiff would not have been harmed.

86. Plaintiff seeks damages to the fullest extent of the law.

### SIXTH CAUSE OF ACTION – BREACH OF FIDUCIARY DUTIES

87. Plaintiff adopts by reference, and incorporates all paragraphs above and below, as if fully stated herein.

88. Defendants' control over and special relationship with Plaintiff gave rise to fiduciary duties. Among these fiduciary duties are: duty of good faith and fair dealing, duty of disclosure.

89. Defendants breached its duties of good faith and fair dealing by making the statements and undertaking the actions and omissions described above, including without limitation making various misrepresentations as set forth in the facts section above, such as:

- Misrepresenting to Plaintiff the nature of the Loan as a purchase of Plaintiff's revenue;

- Misrepresenting to Plaintiff that the Loan Agreement is legal and enforceable when in fact it is a usurious loan, and thus void under New York law;

- Falsely representing to Plaintiff that the weekly Remittances stated in

14

      the Loan Agreement are calculated in good faith based on Purchased Percent of Plaintiff's revenue;

- After entering into the Loan and after over half of the Net Funding had been paid back, falsely claiming that Plaintiff defaulted under the Loan Agreement, and otherwise making it virtually impossible for Plaintiff to obtain a reconciliation of past payments or adjustment of future payments based on the Purchased Percent, despite declining revenue;

- Falsely representing that Kalamata will adjust Plaintiff's future payments based on the Purchased Percent of Plaintiff's revenue;

- Misrepresenting to Plaintiff the remaining balance; and

- Short-changing Plaintiff on their funded amounts and overcharging Plaintiff on the fees deducted from the funding.

- Claiming false defaults by Plaintiff

90. Defendants also manipulated the loan and generated a bogus default, then failed to reconcile the loan or adjust the usurious fixed weekly Remittance payments.

91. Defendants' misrepresentations and grossly unfair dealing proximately caused Plaintiff harm, including the payment of usurious interest, for which Plaintiff seeks damages to the fullest extent of the law.

**SEVENTH CAUSE OF ACTION -- FRAUDULENT TRANSFERS – 11 U.S.C. § 548**

92. Plaintiff adopts by reference, and incorporates all paragraphs above and below, as if fully stated herein.

93. After entering into the Loan Agreement on December 22, 2022, and continuing through late in 2023, Plaintiff paid at least $551,981.80 (the "Transfers") to Kalamata based on the fraudulent and usurious Loan Agreement. The Transfers are enumerated on **Exhibit 2** hereto.

94. To the extent that the Transfers were not in satisfaction of an antecedent debt, then Plaintiff received less than reasonably equivalent value in exchange therefor.

95. Plaintiff was insolvent, based on its debts exceeding its assets and the general inability to pay debts as they came due, on the dates the Transfers were made—and Kalamata was

aware of this fact at the time of the Loan Agreement and at the time of each transfer by Kalamata to Plaintiff.

96. At the time the Transfers were made or incurred, Plaintiff was engaged in business or a transaction, or was about to engage in business or a transaction for which any property remaining with Plaintiff was unreasonably small capital.

97. Pursuant to 11 U.S.C. §548(a)(1)(B), Plaintiff is entitled to a judgment against Kalamata avoiding all of the Transfers as fraudulent transfers.

**EIGHTH CAUSE OF ACTION -- FRAUDULENT TRANSFERS – 11 U.S.C. § 544 AND NEW YORK UNIFORM VOIDABLE TRANSACTION ACT SECTION 273**

98. Plaintiff adopts by reference, and incorporates all paragraphs above and below, as if fully stated herein.

99. After entering into the Loan Agreement on December 22, 2022, and continuing through late in 2023, Plaintiff paid the Transfers based on the fraudulent and usurious Loan Agreement.

100. To the extent that the Transfers were not in satisfaction of an antecedent debt, then Plaintiff received less than reasonably equivalent value in exchange therefor.

101. Plaintiff was insolvent, based on its debts exceeding its assets and the general inability to pay debts as they came due, on the dates the Transfers were made made—and Kalamata was aware of this fact at the time of the Loan Agreement and at the time of each transfer by Plaintiff to Kalamata.

102. At the time the Transfers were made or incurred, Plaintiff was engaged in business or a transaction, or was about to engage in business or a transaction for which any property remaining with Plaintiff was unreasonably small capital.

103. Pursuant to 11 U.S.C. § 544 and the New York Uniform Voidable Transaction Act ("UVTA"), Plaintiff is entitled to a judgment against Kalamata avoiding all of the Transfers as fraudulent transfers.

. . .

## NINTH CAUSE OF ACTION -- PREFERENTIAL TRANSFERS

104. Plaintiff adopts by reference, and incorporates all paragraphs above and below, as if fully stated herein.

105. Certain of the Transfers were taken by Kalamata within ninety (90) days of the Petition Date (the "Preferential Transfers").

106. The Preferential Transfers were transfers of an interest of Plaintiff in property, made to or for the benefit of Kalamata.

107. To the extent any legitimate debt was then owed by Plaintiff to Kalamata, the Preferential Transfers reduced or satisfied such alleged debt.

108. To the extent that the debt on the Loan Agreement was legitimate, the Preferential Transfers were made for or on account of an antecedent debt owed by Plaintiff to Kalamata before the Preferential Transfers were made. To the extent the Preferential Transfers were not made for or on account of an antecedent debt, then Plaintiff received less than reasonably equivalent value in exchange therefor.

109. Plaintiff was insolvent, based on its debts exceeding its assets and the general inability to pay debts as they came due, on the dates the Preferential Transfers were made made— and Kalamata was aware of this fact at the time of the Loan Agreement and at the time of each transfer by Plaintiff to Kalamata.

110. At the time the Preferential Transfers were made or incurred, Plaintiff was engaged in business or a transaction, or was about to engage in business or a transaction for which any property remaining with Plaintiff was unreasonably small capital.

111. The Preferential Transfers enabled Kalamata to receive more than Kalamata would have received if (a) Plaintiff's case was brough under Chapter 7 of the Bankruptcy Code, (b) the Preferential Transfers had not been made, and (c) Kalamata had received payment of such debt to the extent provided by the Bankruptcy Code.

112. Pursuant to 11 U.S.C. §547(b), Plaintiff is entitled to a judgment against Kalamata avoiding all of the Preferential Transfers.

**TENTH CAUSE OF ACTION: RECOVERY OF FUNDS UNDER 11 U.S.C. §§ 550, 551**

113. Plaintiff adopts by reference, and incorporates all paragraphs above and below, as if fully stated herein.

114. The Transfers are avoidable pursuant to 11 U.S.C. §§544 and 548.

115. The Transfers are avoidable as preferences pursuant to 11 U.S.C. §547.

116. Plaintiff, the debtor in this Bankruptcy Case, may recover from Kalamata, and preserve for the benefit of the bankruptcy estate, the preferential and fraudulent transfers pursuant to 11 U.S.C. §§ 550 and 551, along with pre- and post-judgment interest on the value of the transfers.

**ELEVENTH CAUSE OF ACTION: DECLARATORY JUDGMENT**

117. Plaintiff adopts by reference, and incorporates all paragraphs above and below, as if fully stated herein.

118. The Federal Declaratory Judgment Act states that "any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C.A. § 2201(a). Accordingly, Plaintiff seeks declaratory judgment from this Court as follows.

119. In this instance, a declaratory judgment is justiciable, because a substantial controversy of sufficient immediacy and reality exists between parties having adverse legal interests regarding the Loan Agreement between Plaintiff and Kalamata.

120. Kalamata claims that the Loan Agreement is a lawful, non-usurious, agreement to purchase Plaintiff's revenues. Plaintiff claims that the Loan Agreement is an illegal usurious loan agreement disguised as a revenue purchase agreement. Kalamata has taken monies from Plaintiff purportedly in re-payment of revenues. In reality, such funds represent payments on a usurious loan.

121. Plaintiff asks this Court for a declaratory judgment that:

- the Loan Agreement is a usurious,
- the Loan Agreement is illegal,

- the Loan Agreement is void,
- Plaintiff owes nothing to Kalamata, and
- the UCC liens asserted by Kalamata against the property of Plaintiff are void.

**TWELFTH CAUSE OF ACTION: DISALLOWANCE OF PROOF OF CLAIM**

122. Plaintiff adopts by reference, and incorporates all paragraphs above and below, as if fully stated herein.

123. Kalamata filed proof of claim number 1 in the Chapter 11 Case (the "POC").

124. The POC should be disallowed pursuant to 11 U.S.C. § 502(d).

125. The POC should be disallowed as the Loan Agreement is void.

**EXEMPLARY/PUNITIVE DAMAGES**

126. Defendants have acted willfully and maliciously with regard to the facts and claims asserted above. Plaintiff seeks exemplary/punitive damages against Defendants for each cause of action to the fullest extent of applicable law.

**INTEREST**

127. Plaintiff seeks all pre- and post-judgment interest for each cause of action to the fullest extent of applicable law.

**ATTORNEY FEES, EXPENSES, AND COSTS**

128. Plaintiff seeks all reasonable and necessary attorney fees, along with expenses and costs for the prosecution of this action, to the fullest extent of applicable law.

**WHEREFORE,** Plaintiff prays for and demands order and judgment against the Defendants as follows:

1. Damages in an amount to be awarded at trial, including exemplary/punitive damages and pre- and post-judgment interest;

2. Avoidance of the Transfers and Preferential Transfers and judgment in the amount of the Transfers and Preferential Transfers;

3. Declaratory judgment as set forth in Cause of Action Eleven;

4. Disallowance of the POC; and

5. An award of Debtor's attorneys' fees and costs prosecuting this Adversary Proceeding.

Dated this 30th day of July 2024.

                                        GARMAN TURNER GORDON LLP

By: */s/ Talitha Gray Kozlowski*
     TALITHA GRAY KOZLOWSKI, ESQ.
     TERESA M. PILATOWICZ, ESQ.
     7251 Amigo Street, Suite 210
     Las Vegas, Nevada 89119
     [Proposed] *Attorneys for Plaintiff Varaluz, LLC*